IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN ANTONIO BRINKLEY, | : | |
| | : | |
| Petitioner, | : | No. 4:04-CV-533 |
| | : | |
| v. | : | |
| | : | |
| GENE M. JOHNSON, | : | |
| Director of Virginia Department | : | (Judge McClure) |
| of Corrections, and | : | |
| ATTORNEY GENERAL OF | : | |
| THE COMMONWEALTH OF | : | |
| PENNSYLVANIA | : | |

**O R D E R**

November 21, 2005

**INTRODUCTION:**

On March 2, 2004, petitioner, Sean Antonio Brinkley, commenced this action by filing in the United States District Court for the Eastern District of Virginia a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  One week later the motion was transferred to this court.  Petitioner challenges the legality of a detainer placed on him by the Commonwealth of Pennsylvania.  Petitioner is currently a Virginia state prisoner and asserts (1) that the Pennsylvania state capias is "stale (outdated)" (Rec. Doc. No. 1, at 5.); (2) that the Pennsylvania authorities did not exercise 'due diligence' in executing his warrant (Rec. Doc. No. 1, at 6.);

1

and (3) that his "Probation/Parole expired in February 1996 well before the warrant was issued in October 1996." (Rec. Doc. No. 1, at 7.). For the following reasons we will dismiss Brinkley's petition.

**BACKGROUND:**

On February 10, 1995, in a case docketed at No. 82 C.D. 1995, in the Dauphin County Court of Common Pleas, Brinkley entered a plea of guilty to a charge of Theft by Deception in violation of 18 Pa. C.S.A. § 3922. Brinkley also entered a plea of guilty to two charges of Insurance Fraud in violation of 18 Pa. C.S.A. § 4117. On that same day, Brinkley was sentenced to incarceration for a period of 2 to 23 months in the Dauphin County Prison, along with various fines and restitution charges. Brinkley did not appeal the judgment of sentence.

On October 2, 1996, a capias was issued for Brinkley based on a violation of the terms and conditions of his parole. On January 4, 2002, the Commonwealth's Probation and Parole Office contacted F.C.I. - Cumberland, MD notifying the Federal Corrections Facility that the District Attorney's Office had authorized extradition on Brinkley and that the capias should act as a detainer in holding the defendant. On May 15, 2003, Brinkley was subsequently transferred to the custody of the Virginia Department of Corrections and is currently incarcerated in Virginia.

At the time of his transfer the detainer was again lodged against him.[1]

Prior to filing the instant petition Brinkley filed in the Dauphin County Court of Common Pleas a Petition for Writ of Habeas Corpus that was denied on January 21, 2004.  On March 12, 2004, shortly after the filing of this petition, Brinkley filed a Petition for Writ of Habeas Corpus in the Supreme Court of Pennsylvania, docketed at No. 38 MM 2004, which was likewise summarily denied on July 23, 2004.[2]

**DISCUSSION:**

### I.  Petitions Under 28 U.S.C. § 2254

Pursuant to 28 U.S.C. § 2254 a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA),

---

[1] We note in passing that Brinkley could not be located in the Virginia Department of Corrections inmate locator system with a search under either his name or Department issued identification number.  See http://www2.vipnet.org/cgi-bin/vadoc/doc.cgi (Last visited Nov. 21, 2005.)

[2] The court has not seen the contents of those petitions.

Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See 28 U.S.C. § 2244(d)(1). Additionally, we may only reach the merits of a petitioner's federal claims if each claim in his petition (1) has been exhausted in the state courts, and (2) is not procedurally defaulted. See 28 U.S.C. § 2254(b)(1)(A); Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Slutzker v. Johnson, 393 F.3d 373, 379-81 (3d Cir. 2004).

Exhaustion is required because it gives the state the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam)) (internal quotations and additional citations omitted). In order to provide the state with the opportunity to address the prisoner's federal claims, a state prisoner must "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Id. (citing Duncan, 513 U.S. at 365-66.)

## II. Brinkley's Petition Challenges A Parole Violation Detainer

As Brinkley correctly notes, the Interstate Agreement on Detainers Act (IADA) does not apply to Brinkley's detainer because his detainer is based on parole-violation charges. See Carchman v. Nash, 473 U.S. 716, 725 (1985)

(holding IADA is not applicable to detainers based on probation-violation charges). Therefore, he has no statutory right to a prompt hearing, and we do not expect Brinkley to first exhaust his claims through the IADA, as respondents suggest.

We turn, then, to the claims in Brinkley's petition. We agree with respondents that the first two claims can be addressed together; in those claims Brinkley asserts that his detainer is stale, and that its issuance has violated his Fourteenth Amendment right to due process. Both claims assert that his detainer is invalid for not being timely filed, and in both cases Brinkley cites to no clearly established federal law that establishes that a capias may become stale.[3]

The United States Supreme Court in Moody v. Daggett, 429 U.S. 78 (1976), held that a federal parolee, imprisoned for a federal crime committed while on parole, is not constitutionally entitled to an immediate parole revocation hearing when a detainer for a parole-violation charge is lodged with the institution of his confinement. Id. at 86. In Moody the issuance of the parole violator warrant, and

---

[3]Petitioner does cite to Shelton v. Ciccone, 578 F.2d 1241 (8th Cir. 1978), in which the appeals court directed that an evidentiary hearing be held on petitioner's habeas corpus where there were allegations that the U.S. Marshals allowed an arrest warrant to sit unexecuted for seven years following the imposition of a sentence, and that during that time petitioner was confined in state and federal facilities and no federal detainer had been lodged. In the instant case the Commonwealth of Pennsylvania filed a detainer with the federal authorities and with the State of Virginia authorities. As we later note, petitioner may challenge the validity of his capias at his revocation hearing.

the resulting detainer, did not deprive the prisoner of any constitutional right, and the court found that there was no constitutional duty to provide the prisoner with a parole violation hearing until he was taken into custody as a parole violator by execution of the warrant.  The Court held that it was the "execution of the warrant and custody under the warrant as the operative event triggering any loss of liberty attendant upon parole revocation."  Id. at 87.

The Third Circuit in Caruso v. United States Bd. Parole, 570 F.2d 1150 (1978), applied the holding of Moody to a state prisoner who sought an immediate revocation hearing from federal parole authorities who had issued an unexecuted federal parole violator warrant and had the warrant lodged with state prison officials, and held that the state prisoner's due process rights were not violated when he was not afforded an immediate parole revocation hearing.  Id. at 1151. The Third Circuit reiterated that there was no loss of liberty until the parole violator warrant was executed.  Id. at 1154 n.7; see also Riley v. Holt, 2005 WL 1154755, *2 (M.D. Pa. May 4, 2005) (Caldwell, J.) ("It is well settled law that the Due Process right to a revocation hearing accrues when the warrant is executed, not when it is issued.").  The holding of Moody has been followed in cases like Brinkley's where one state lodges a detainer against a parolee imprisoned in another state's institution.  See Larson v. McKenzie, 554 F.2d 131, 132-33 (4th Cir. 1977)


the resulting detainer, did not deprive the prisoner of any constitutional right, and the court found that there was no constitutional duty to provide the prisoner with a parole violation hearing until he was taken into custody as a parole violator by execution of the warrant.  The Court held that it was the "execution of the warrant and custody under the warrant as the operative event triggering any loss of liberty attendant upon parole revocation."  Id. at 87.

The Third Circuit in Caruso v. United States Bd. Parole, 570 F.2d 1150 (1978), applied the holding of Moody to a state prisoner who sought an immediate revocation hearing from federal parole authorities who had issued an unexecuted federal parole violator warrant and had the warrant lodged with state prison officials, and held that the state prisoner's due process rights were not violated when he was not afforded an immediate parole revocation hearing.  Id. at 1151.  The Third Circuit reiterated that there was no loss of liberty until the parole violator warrant was executed.  Id. at 1154 n.7; see also Riley v. Holt, 2005 WL 1154755, *2 (M.D. Pa. May 4, 2005) (Caldwell, J.) ("It is well settled law that the Due Process right to a revocation hearing accrues when the warrant is executed, not when it is issued.").  The holding of Moody has been followed in cases like Brinkley's where one state lodges a detainer against a parolee imprisoned in another state's institution.  See Larson v. McKenzie, 554 F.2d 131, 132-33 (4th Cir. 1977)

(per curiam); Calloway v. District of Columbia Bd. of Parole, 103 Fed.Appx. 740, *741 (4th Cir. 2004) (per curiam); see also Comm. v. Clutter, 615 A.2d 362, 365 (Pa.Super.Ct. 1992).  Brinkley may raise arguments about the staleness of his capias at his revocation hearing.[4]   However, he is not constitutionally entitled to an immediate revocation hearing, and the issuance of the detainer was sound.

Finally, Brinkley contends that the capias was issued after his parole had expired.  Respondents have indicated that because of his being credited time Brinkley's maximum sentence would have expired on approximately November 30, 1996.  Brinkley is incorrect in contending that his parole expired prior to the issuance of the capias on October 2, 1996.[5]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Brinkley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed.  (Rec. Doc. No. 1.)

---

[4] Under the Pennsylvania Rules of Criminal Procedure, Brinkley is entitled to a parole revocation hearing "as speedily as possible."  Pa. R. Crim. P. 708(B)(1).

[5] If Brinkley is asserting that the capias did not issue until January 2002, then the record refutes his claim.   The January 2002 date appears to be the time-stamp for the date that the certified copy was produced for purposes of lodging Brinkley's detainer with Federal authorities.

2. No basis exists for a certificate of appealability. See 28 U.S.C. § 2253.

3. The clerk is directed to close the case file.

 s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge